UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**LAKISHA M. BRIDGES,**

      **Plaintiff,**

      v.                                                                                       **Case No. 23-CV-959-SCD**

**CITY OF MILWAUKEE,**

      **Defendant.**

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION IN LIMINE

Lakisha Bridges has filed suit against her former employer, the City of Milwaukee. She alleges the City failed to provide her with reasonable disability-related accommodations, retaliated against her for complaining about discrimination, and constructively terminated her employment on the basis of her disabilities. With the dispositive motion deadline drawing near, Bridges has filed an expedited motion in limine to exclude certain e-mails from evidence. She claims the e-mails are attorney-client privileged. The defendant disagrees because Bridges sent the e-mails from her work account. For the reasons explained below, I find the attorney-client privilege does not shield these e-mails from the light of litigation. Therefore, I will deny Bridges' motion to exclude them from evidence.

## BACKGROUND

Bridges worked in various administrative roles for the City from 2009 to 2021. ECF No. 20-1. During that time, the City provided Bridges with a work e-mail account that she used to correspond with other employees, third parties, and occasionally, her legal counsel. ECF No. 19-1 ¶¶ 2–4. Bridges did not share the e-mails in question with anyone besides her

legal counsel. *Id.* ¶ 6. She maintains that the e-mails involved legal advice and sharing information related to this lawsuit. *Id.* ¶ 5.

The City's "E-mail Use Policy" (effective since March 10, 2016) directs employees to use their work accounts for all work-related communication and official correspondence with constituents. ECF No. 20-5 at 1. Under the "Acceptable Use" section, the policy states: "The City acknowledges that incidental use of the city's e-mail system for personal purposes may be appropriate. However, departments must ensure that such use does not impair the employee's ability to fulfill his or her job responsibilities." *Id.* at 2. In the next section on "Privacy and Security," the policy reads:

> All e-mail sent from or received are considered City property. City and departmental management reserve the right to examine, at any time and without prior notice, all e-mail. Users should not assume any privacy or confidentiality for messages they transmit or receive via the City's e-mail system. Users should never send confidential or sensitive information via unencrypted e-mail.

*Id.* The City's Chief Information Officer provided a declaration, explaining that the City's information system displays the following notification when users access the system:

> You acknowledge and consent to unrestricted monitoring, interception, recording and searching of all communications and data traveling to or from or stored on this system at any time and for any purpose by personnel authorized by the City of Milwaukee. You also consent to the unrestricted disclosure of all communications and data traveling to or from, or stored on this system at any time and for any purpose to any person or entity, including government entities, authorized by the City of Milwaukee. You are acknowledging that you have no reasonable expectation of privacy regarding your use of this system. These acknowledgements and consents cover all use of the system, including work-related and personal use without exception.

ECF No. 22 at 2–3. Bridges also signed an acknowledgement on October 1, 2015, recognizing that she understood the Laptop/Tablet Computer Policy. ECF No. 20-8 ("The laptops and tablets shall only be used for official City of Milwaukee related business.").

Bridges worked in the Department of Neighborhood Services (DNS) for all but the first eight months of her employment with the City. ECF No. 20 ¶¶ 5–9. Section XII of the DNS Work Rules notifies employees that "all e-mail is considered to be public information and available as such." ECF No. 20-6 at 4. Bridges acknowledged receipt of the DNS Work Rules on December 30, 2009—days after joining the DNS. ECF Nos. 20 ¶ 8, 20-2. She also acknowledged the DNS policies and/or the online availability of the DNS policies on February 23, 2012, and again on July 6, 2017. ECF Nos. 20-7, 20-9.

Bridges began teleworking in April 2020. ECF No. 20 ¶ 23. The DNS telework policy, published in September 2020, notified employees that telecommuting did not change their duties, obligations, responsibilities, or terms and conditions of employment. ECF No. 20-10. The policy also advised employees that they still must comply with all city rules, policies, practices, and instructions. *Id.*

On July 1, 2020, Bridges corresponded with a DNS administrator about confidentiality via her work e-mail. ECF No. 20-13. In that exchange, Bridges wrote that the "excuse" she intended to submit related to her schedule contained "confidential" medical information and asked, "Would an e-mail still be ok or should I bring it with me upon my return?" *Id.* at 1. The administrator responded that Bridges could bring the document when she returned to work. *Id.* at 2.

Bridges resigned from city employment on July 22, 2021. ECF No. 20-3. On July 18, 2023, Bridges filed the present action against the City. ECF No. 1. On October 11, 2024, Bridges filed an expedited motion in limine to exclude certain e-mails from evidence based on attorney-client privilege. ECF No. 19. The City filed a response opposing the motion. ECF

No. 23. Bridges filed a reply brief in support of her motion, after I granted her leave to do so. *See* ECF Nos. 24–26.

## LEGAL STANDARDS

According to Rule 501 of the Federal Rules of Evidence, the common law governs claims of privilege, unless the Constitution, federal statutes, or Supreme Court rules provide otherwise. However, "state law governs privilege regarding a [civil] claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Both parties have analyzed the plaintiff's present motion through the lens of Wisconsin state law on attorney-client privilege. *See* ECF Nos. 19, 23, 26. But they have not identified what claim or defense is governed by state law. Bridges exclusively invokes federal law in her complaint. *See* ECF No. 1. In its answer, the City maintains, among other affirmative defenses, that the plaintiff's claims are subject to the limitations and immunities in Wisconsin Statute § 893.80. *See* ECF No. 8 at 22. The parties have not presented the e-mails in question, and I will not make an inferential leap that the privilege regards this state law defense. Because the action overarchingly presents federal claims and defenses, I will analyze the privilege's applicability from a federal lens.

"This Circuit has long embraced the articulation of the attorney-client privilege first set forth by Dean Wigmore in his 1904 treatise Evidence in Trials at Common Law." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citations omitted). That articulation is summarized as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* (citing 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)). "In regards to waiver, '[w]hile the client need not intend to waive the privilege (or even be aware of its existence), [she] must intend to disclose the privileged information or to consent to its disclosure." *Goldstein v. Colborne Acquisition Co., LLC*, 873 F. Supp. 2d 932, 935 (N.D. Ill. 2012) (citing Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5507, 578 (West Publishing Co. 1986)). "The party seeking to invoke the privilege bears the burden of proving all of its essential elements." *Evans*, 113 F.3d at 1461.

## ANALYSIS

Because the specific emails in question are not before me, the parties' dispute comes down to whether Bridges' use of her work e-mail account *categorically* waived the protections of the attorney-client privilege. "Whether use of work e-mail to communicate with an attorney destroys the privilege is a relatively undeveloped area of law, both nationally and in this District." *Goldstein*, 873 F. Supp. 2d at 935. When the question has arisen, district courts in the Seventh Circuit, and across the country, have generally applied a four-factor test to assess whether the employee's use of his or her work e-mail waived the attorney-client privilege. *See id.*; *Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2020 WL 7027567, at *5 (N.D. Ill. Nov. 30, 2020); *Cho v. DePaul Univ.*, No. 18 C 8012, 2020 WL 2526486, at *1–2 (N.D. Ill. May 17, 2020); *see also, e.g.*, *In re Info. Mgmt. Servs., Inc. Derivative Litig.*, 81 A.3d 278, 287 (Del. Ch. 2013).

Derived from the test set forth in *In re: Asia Global Crossing, Ltd., et al.*, 322 B.R. 247, 257 (S.D.N.Y. 2005), those factors include:

> (1) whether the corporation banned personal or objectionable use of company computer or e-mail; (2) whether the company monitored the use of the

employee's computer or e-mail; (3) whether third parties had a right of access to the computer or e-mail; and (4) whether the corporation notified the employee, or whether the employee was aware, of use and monitoring policies.

*Goldstein*, 873 F. Supp. 2d at 935. The *Asia Global* waiver factors essentially assess whether the party's subjective expectation of confidentiality was objectively reasonable under the circumstances. *See Goldstein*, 873 F. Supp. 2d at 936 ("In *Asia Global*, the court found no waiver because the subjective belief that the messages were sent in confidence was reasonable.").

With respect to the first factor, the City claims that it prohibited employees' personal use of their work e-mail accounts. ECF No. 23 at 7. I cannot fully accept this premise given that the e-mail use policy stated, "The City acknowledges that incidental use of the city's e-mail system for personal purposes may be appropriate." ECF No. 20-5 at 2. The policies cited by the City reveal that it prohibited *confidential* use of the e-mail account, but not *personal* use. *See id.* (e-mail use policy); ECF No. 22 at 2–3 (information system notification); ECF No. 20-6 at 4 (DNS Work Rules). The City also cited its Laptop/Tablet Computer Policy, which restricted employees to using those devices for official business. *See* ECF No. 20-8. However, the record does not reflect whether Bridges necessarily sent the e-mails from her work laptop or if she could access the e-mail account from other devices. Accordingly, I find the City did not completely ban personal use of the e-mail account, and therefore, the first factor does not support waiver.

The second factor considers whether the employer "monitored the use of the employee's computer or e-mail." *Goldstein*, 873 F. Supp. 2d at 935. The City does not assert that it actually monitored its employees' computers or e-mails. *See* ECF No. 23 (asserting the City "had the *right* to monitor, access, retain, and disclose its property") (emphasis added)). Therefore, this factor also does not support waiver.

The third factor inquires "whether third parties had a right of access to the computer or e-mail." *Goldstein*, 873 F. Supp. 2d at 935. The City maintains that all records created or received by the City originally in e-mail form, including any attachments, are public records. ECF No. 23 at 6. Bridges counters that every e-mail is not a "public record" because "the right of the public to access [records] is not absolute." ECF No. 26 at 3 (quoting *Lakeland Times v. Lakeland Union High Sch.*, No. 2014AP95, 2014 WL 4548127, at *4 (Wis. App. Sept. 16, 2014)). Bridges is right that Wisconsin law does provide several excepted categories to public records disclosure, such as "materials that are purely the personal property of the custodian and have no relation to his or her office." Wis. Stat. § 19.32(2); *see also* Wis. Stat. § 19.36 (setting forth limitations on public records access and withholding). Even so, the fact that there may be some conceivable exceptions to disclosure (which would be applied on a case-by-case basis) does not mean that the emails are not generally deemed public records. As the *Lakeland Times* case recognizes, the open records law "shall be construed in every instance with a presumption of complete public access . . . The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." 2014 WL 4548127 at *4 (quoting Wis. Stat. § 19.31). Accordingly, because disclosure of government emails is the norm, not the exception, the third factor supports waiver.

The fourth factor asks whether the employer "notified the employee, or whether the employee was aware, of use and monitoring policies." *Goldstein*, 873 F. Supp. 2d at 935. The City maintains that Bridges knew or reasonably should have known that communications with her attorney sent via her work e-mail were not confidential. ECF No. 23 at 7. After all, Bridge specifically acknowledged the City's E-mail Use Policy, DNS Work Rules, Computer

Usage notification, Laptop/Tablet Policy, and DNS Teleworking policies. ECF Nos. 20-2, 20-5, 20-6, 20-7, 20-8, 20-9, 20-10, 20-11, 20-12, 22. These policies consistently warn employees that their correspondence is "considered City property" and "[u]sers should not assume any privacy or confidentiality for messages they transmit or receive via the City's email system," ECF No. 20-5, as well as that they "have no reasonable expectation of privacy." ECF No. 22 ¶ 14. Given this clear, consistent, and unchallenged messaging, the City has established that it notified Bridges of its use and monitoring policies. Under these circumstances, Bridges cannot reasonably claim that she had an expectation of confidentiality when she e-mailed her attorney via her work account. *See Goldstein*, 873 F. Supp. 2d at 935 ("If the client cares so little for the confidentiality of the communications as to fail to take steps to insure against unintended disclosures, it is hard to justify requiring the court to take elaborate measures to protect the client against the results of his own carelessness." (quoting Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5507, 578 (West Publishing Co. 1986)). This fourth factor decisively tips the scale towards a finding of waiver.

Bridges protests that public employees like herself do not have lesser privacy rights. ECF No. 26 at 3. It's true that the Supreme Court has confirmed that "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). However, "[p]ublic employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.* The *Asia Global* factors weighed above evaluate the reasonableness of that expectation of privacy in light of office practices

and procedures in the digital age. *See id.* ("Fourth Amendment rights are implicated only if the conduct of the [public employer] at issue in this case infringed 'an expectation of privacy that society is prepared to consider reasonable'"); *Goldstein*, 873 F. Supp. 2d at 935 (applying *Asia Global* factors to e-mail correspondence).

Ultimately, for the privilege to apply, the attorney and client must have made the communication in confidence. *See Evans*, 113 F.3d at 1461; *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) ("[I]nformation imparted to counsel without any expectation of confidentiality is not privileged." (citation omitted)). Bridges knew or should have known that e-mail correspondence via her work account was non-confidential. *See Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) (employer "announced that it could inspect the laptops that it furnished for the use of its employees, and this destroyed any reasonable expectation of privacy that [the plaintiff] might have had"). Therefore, Bridges has failed to meet her burden of establishing the essential confidentiality element of the attorney-client privilege. *See Evans*, 113 F.3d at 1461.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Plaintiff's motion in limine, ECF No. 19.

**SO ORDERED** this 7th day of November, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge